UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ELISA A.,[1]

        Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case. No. 6:23-cv-00727-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Elisa A. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–33. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff protectively filed an application for disability insurance benefits on June 17, 2020, alleging a disability onset date of June 20, 2013. Tr. 13. The Commissioner denied

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of the last name.

1 – OPINION AND ORDER

plaintiff's claim on September 3, 2020, and again upon reconsideration on July 2, 2021. *Id*. Plaintiff filed a written request for a hearing on July 23, 2021, and hearings were held before Administrative Law Judge Richard Geib on January 6, 2022, and April 19, 2022. Tr. 41–73, 76–105. The ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 13–31. The Appeals Council denied plaintiff's request for review on March 20, 2023. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

2 – OPINION AND ORDER

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 20, 2013, through her date last insured of September 30, 2016. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: undifferentiated connective tissue disorder versus inflammatory arthritis, cervical, lumbar and sacroiliac disorders, and Sjogren's syndrome. *Id*.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.C. § 404.1567(b), except "she could sit for four hours at a time, could stand up to two hours at a time, could walk up to two hours at a time, could sit for six hours total, could stand for four hours total, could walk for four hours total; could push/pull frequently and as much as she can lift and carry; could frequently use the feet to operate foot controls; she could occasionally climb ramps and stairs and never climb ladders, ropes, scaffolds, could occasionally balance, stoop, kneel, crouch, crawl; she could occasionally reach overhead bilaterally, could frequently reach in other directions, could frequently handle, handle, and feel; she could have frequent exposure to humidity and wetness, could never have exposure to extreme cold, could have frequent exposure to

3 – OPINION AND ORDER

extreme heat; could have occasional exposure to vibration." Tr. 21-22.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. Tr. 29.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including electronics worker, small products assembler II, and marker. Tr. 30. Thus, the ALJ concluded plaintiff was not disabled at any time from June 20, 2013, the alleged onset date, through September 30, 2016, the date last insured. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to give clear and convincing reasons supported by substantial evidence to reject her subjective symptom testimony, and (2) erred in evaluating her impairments at step three. Pl. Br. 2, ECF 17.

### I.  Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not

4 – OPINION AND ORDER

arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the

5 – OPINION AND ORDER

reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ provided three distinct rationales for discounting plaintiff's symptom testimony. First, the ALJ found that the symptoms were inconsistent with the objective medical evidence; next, the ALJ noted that plaintiff symptoms were managed with treatment and a routine course of pain management; and finally, the ALJ determined that plaintiff's symptom complaints conflicted with her daily activities. Tr. 23–25.

A.  **Inconsistency with Objective Medical Evidence**

The ALJ acknowledged that plaintiff complained of a wide range of signs and symptoms, including:

> [S]he could not keep up with her work as a caregiver due to joint pain and fatigue. She testified that she had constant pain in her feet, back, fingers, and wrist. She testified that she had difficulty lifting and her symptoms were worse with movement. She testified that she could not get through the day without resting due to fatigue.

Tr. 22 (internal citations omitted). However, the ALJ noted that throughout the relevant period, many of plaintiff's physical examinations with her rheumatologist "rarely showed signs of pain behavior, fatigue, or muscle weakness." Tr. 24 (citing Tr. 2169–2188). The ALJ also observed that despite plaintiff's complaints:

6 – OPINION AND ORDER

> [s]he was sometimes noted to have swelling in the joints of the fingers and tenderness in the joints and spine, but at other times she showed no signs of active inflammation. For example, synovitis in the left wrist was noted in an August 2013 appointment, but it was not observed when she saw a provider in August 2014. No signs of active inflammation were noted in April 2015, October 2015, June 2016, September 2016, appointments. Although swelling and tenderness and the fingers were noted in some appointments, the claimant rarely complained of significant dysfunction with using her hands for activities and she was rarely observed to show signs of significant dysfunction in the use of the hands. X-rays of the hands, wrists, and knees showed no signs of erosion or other abnormalities associated with autoimmune disorders. She also did not report significant issues with dry eyes a common Sjogren's symptom. Moreover, her healthcare providers rarely observed her to have difficulty walking and was not observed to have significant or persistent muscle weakness or atrophy, which suggest her symptoms would not prevent her from performing light work with reduced standing and walking, as accounted for in the above residual functional capacity.

*Id*. (citing Tr. 2361, 2390, 2171, 2175, 2188, 2346–47, 2169–2188 2341–89, 529, 1898–99, 2385, 2388, 1151, 1156, 1161, 1176, 1632, 1670, 1681, 1685, 1692, 1774).

The treatment notes and other objective evidence cited by the ALJ support the ALJ's conclusions, namely, that:

> the limited observations of pain behavior and fatigue, the observations of no active inflammation in some appointments, the limited reports and observations of hand dysfunction, the x-rays showing no signs of inflammatory arthritis, the limited reports of dry eyes, and observations of mostly normal gait and strength, it strongly suggests that the claimant's autoimmune disorders (i.e. connective tissue disease, inflammatory arthritis, Sjogren's syndrome) would not cause greater limitations than are accounted for in the [] residual functional capacity.

Tr. 24.

In response, plaintiff cites to portions of the medical record to show that, in her view, the ALJs "recounting was not an accurate reflection of the record." Pl. Br. 28, ECF 17.

7 – OPINION AND ORDER

Plaintiff argues that "[t]here are many, many reports of [her] pain symptoms in the record that were never questioned by her doctors" and that "[t]here are many reports of significant fatigue with various medication regimens. Her doctors had no reason not to believe her." *Id*. Thus, plaintiff argues, the ALJ's rejection of her complaints regarding pain and fatigue was not a clear and convincing reason and supported by substantial evidence. *Id*.

However, it was reasonable for the ALJ to consider plaintiff's normal x-ray results alongside numerous treatment notes showing that she had no active inflammation or muscle weakness to undermine her allegations of completely disabling symptoms. Tr. 25. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). Accordingly, the ALJ's first rationale for discrediting plaintiff's symptom allegations—that they were inconsistent with the objective medical evidence—meets the clear-and-convincing threshold.

**B.     Improvement with Treatment**

The ALJ also discredited plaintiff's symptoms because her autoimmune disorder medication management regimen suggests her symptoms were adequately managed and had improved. Tr. 23. A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

8 – OPINION AND ORDER

The ALJ observed that plaintiff's providers placed her on Simponi in 2013 to address her rheumatoid arthritis and "she reported a 50 percent improvement in stiffness and joint pain." Tr. 23 (citing Tr. 2392). She also reported a "20 percent improvement in symptoms" with methotrexate. *Id*. (citing Tr. 2389). In 2014, plaintiff reported to her rheumatologist that her "joint pain did not 'affect her quality of life,'" which the ALJ concluded was "very inconsistent with the claimant's testimony of disabling symptoms during the period at issue." *Id*. (citing Tr. 2361). The ALJ noted that plaintiff changed medications over the years due to various infections, but in 2016 she responded positively to Orencia and only had "residual pain in the knees, feet, and fingers." Tr. 23–24 (citing Tr. 2169–2175). The ALJ also noted that plaintiff was not regularly prescribed opioid medications and treated with Tylenol. Tr. 24. The ALJ concluded that plaintiff's "improvements in symptoms with autoimmune treatments and routine pain management strongly suggest her symptoms before the date last insured were not as limiting as alleged." Tr. 24. An ALJ may discount a claimant's testimony regarding the severity of an impairment where the claimant has received conservative treatment. *Parra*, 481 F.3d at 751 (finding the ALJ properly discredited testimony of disabling pain that was "treated with an over-the-counter pain medication").

Plaintiff highlights various parts of the medical record to argue against the ALJ's characterization of her pain management regimen as "routine." Pl. Reply Br. 3, ECF 24. Plaintiff contends that she "was taking Percocet for pain along with Tylenol but neither fully addressed the pain she was experiencing." *Id*. (citing Tr. 2105). Medical records from 2014 show that plaintiff's "prior prescription for Percocet . . . was given to her for an unrelated condition," i.e., a "dental issue," and she took it only "on occasion" for pain

9 – OPINION AND ORDER

associated with rheumatoid arthritis. Tr. 2105. The records further show that her doctor "explained that opiates would be associated with increased risk for somnolence which she already seems to have had with muscle relaxers in the past" and that "chronic use of opiates would require to have her on a pain contract and that she would need to submit to random urine drug testing." *Id.* "After discussing this[,] [plaintiff] decided that for now she would stay with Tylenol." *Id.* Considering the circumstances relating to plaintiff's Percocet prescription, the ALJ did not err in concluding that plaintiff's medication regimen was conservative.

In sum, the ALJ's conclusions are supported by substantial evidence, and this court may not reweigh the evidence. *Garrison*, 759 F.3d at 1010 ("Where the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ.") (internal quotation marks and citation omitted). The ALJ's second rationale meets the exacting clear-and-convincing legal standard. Because the ALJ provided at least one valid reason for rejecting plaintiff's subjective symptom testimony, it is unnecessary to reach the third reason.

**II.    Step-Three Evaluation**

At step three, the ALJ considers whether a claimant's impairment or combination of impairments meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the impairment is *per se* disabling and the ALJ must award benefits.

Plaintiff contends that her impairments met or equaled Listing 14.09D for inflammatory arthritis. Pl. Br. 28, ECF 17. Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least
> two constitutional symptoms or signs (severe fatigue, fever,

> malaise, or involuntary weight loss) and one of the following at
> the marked level:
> 1. Limitation of activities of daily living,
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to
> deficiencies in concentration, persistence, and pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D.  A "marked" limitation "means that the signs and symptoms of your immune system disorder interfere seriously with your ability to function." *Id.*, § 14.00I.5.  Although it is not necessary to use a scale, "marked" "would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." *Id*.  A marked limitation may exist "when several activities or functions are impaired, or even when only one is impaired." *Id*.  Also, it is not necessary to be "totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with [the claimant's] ability to function independently, appropriately, and effectively.  The term 'marked' does not imply that you must be confined to bed, hospitalized, or in a nursing home." *Id*.

A claimant has "marked" limitation in activities of daily living, such as doing household chores, maintaining grooming and hygiene, using a post office, taking public transportation, or paying bills, if the claimant has "a serious limitation in [the] ability to maintain a household or take public transportation because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by [the claimant's] immune system disorder (including manifestations of the disorder) or its treatment, even if [the claimant] is able to perform some self-care activities." *Id.*, § 14.00I.6.

Completing tasks in a timely manner "involves the ability to sustain concentration, persistence, or pace to permit timely completion of tasks commonly found in work settings."

11 – OPINION AND ORDER

*Id.*, § 14.00I.8.  A claimant has a "marked" limitation in completing tasks if the claimant has "a serious limitation in [the] ability to sustain concentration or pace adequate to complete work-related tasks because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by [the claimant's] immune system disorder (including manifestations of the disorder) or its treatment, even if [the claimant] is able to do some routine activities of daily living."  *Id*.

In concluding that plaintiff's rheumatoid arthritis did not meet a listing, the ALJ stated:

> Listing 14.09 was considered in evaluating [plaintiff]'s inflammatory arthritis, but the evidence does not show that this condition has resulted in an inability to ambulate effectively or to perform fine and gross movements effectively; or repeated manifestations of inflammatory arthritis with at least two o[f] the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: limitation of activities of daily living; limitation in maintaining social functioning; or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.

Tr. 21.

Plaintiff argues that her "condition clearly meets the requirements of the Listings.  She suffers from severe fatigue, she has constitutional symptoms in her joints due to [rheumatoid arthritis] and she is markedly limited in her ability to perform her daily activities."  *Id*.  The Commissioner responds that "[plaintiff] lists evidence in the record that the ALJ also discussed, and she baldly claims she met the requirements of 14.09.  She does not explain with any specificity, however, how the evidence supports such a finding."  Def. Br. 7, ECF 20 (internal citations omitted).  Indeed, as the Commissioner argues, "[a] generalized assertion of functional problems is not enough to establish disability at step


three." *Id*. (citing *Tackett*, 180 F.3d at 1100).  Moreover, as the ALJ observed, plaintiff has failed to point to evidence showing "repeated manifestations of inflammatory arthritis with at least two o[f] the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)."  Tr. 21 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 14.00I, 14.09D).  The only "constitutional symptom or sign" plaintiff points to is severe fatigue, and absent evidence of accompanying fever, malaise, or involuntary weight loss, the ALJ did not err in finding that she did not meet the requirements of Listing 14.09.  Accordingly, the ALJ's ruling on step three will not be disturbed by this court.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED June 4, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge